## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re Mobile Telecommunications Technologies, LLC, | Case No. 16-md-02722-LPS-CJB |
| MOBILE TELECOMMUNICATIONS TECHNOLOGIES, LLC, | |
| Plaintiff, | |
| v. | C.A. No. 16-699-LPS-CJB |
| RUCKUS WIRELESS, INC., | |
| Defendant. | |

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE
Daniel R. Scardino, Henning Schmidt, Drew Zerdecki, Kyle Harter, REED & SCARDINO LLP, Austin, TX

 Counsel for Mobile Telecommunications Technologies, LLC.


Philip A. Rovner, Jonathan A. Choa, POTTER ANDERSON & CORROON LLP, Wilmington, DE
Korula T. Cherian, RUYAKCHERIAN, LLP, Berkeley, CA
Ronald Wielkopolski, RUYAKCHERIAN, LLP, Washington, DC

 Counsel for Ruckus Wireless, Inc.

---

### MEMORANDUM OPINION


March 20, 2017
Wilmington, Delaware



**STARK, U.S. District Judge:**

Pending before the Court is Ruckus Wireless, Inc's ("Ruckus" or "Defendant")[1] motion

to dismiss for failure to state a claim, filed pursuant to Federal Rule of Civil Procedure 12(b)(6).

(D.I. 15)[2] ("Motion")  For the reasons below, the Court will deny the Motion.

## I.     BACKGROUND

### A.     Procedural History

On January 4, 2016, Plaintiff Mobile Telecommunications Technologies, LLC ("MTel")

filed seven suits in the United States District Court for the Eastern District of Texas, each

alleging infringement of U.S. Patent Nos. 5,590,403 ("'403 patent"); 5,915,210 ("'210 patent");

and 5,659,891 ("'891 patent") (collectively, the "patents-in-suit" or "asserted patents").[3]  The

seven actions were consolidated into one lead case on April 11, 2016.  (C.A. No. 16-692 D.I. 30)

On April 13, 2016, declaratory judgment plaintiffs ARRIS Group Inc. ("ARRIS") and

Ubee Interactive Inc. ("Ubee") (collectively, "DJ Plaintiffs") filed separate actions against MTel

in this Court, each seeking declaratory judgment of non-infringement of the patents-in-suit.

(C.A. No. 16-259 D.I. 1; C.A. No. 16-260 D.I. 1)  On April 19, 2016, BHN filed a similar

---

[1]Although MTel sued other defendants in addition to Ruckus, in this Opinion "Defendant" refers only to Ruckus.

[2]All docket citations are to C.A. No. 16-699, unless otherwise noted.

[3]The seven cases (and respective defendants) are: C.A. No. 16-692 (Time Warner Cable LLC, Time Warner Cable Enterprises LLC, and Time Warner Cable Texas LLC (collectively, "TWC")); C.A. No. 16-693 (Bright House Networks, LLC ("BHN")); C.A. No. 16-694 (Charter Communications Inc. ("Charter")); C.A. No. 16-695 (Cox Communications, Inc. ("Cox")); C.A. No. 16-696 (Aruba Networks, Inc., Hewlett Packard Enterprise Company, and HP Inc. ("HP")); C.A. No. 16-697 (Brocade Communications Systems, Inc. ("Brocade")); and C.A. No. 16-698 (Juniper Networks, Inc. ("Juniper")).

declaratory judgment action in this Court. (C.A. No. 16-277 D.I. 1)

On May 3, 2016, MTel filed four additional lawsuits in the Eastern District of Texas against four new defendants, alleging infringement of the same three patents.[4]  Three of these cases were consolidated into one lead case on July 21, 2016 (C.A. No. 16-700 D.I. 6), and the fourth was added on July 29, 2016 (*id*. at D.I. 7).[5]

DJ Plaintiffs and the Texas Defendants fall into two general categories.  Ruckus, ARRIS, Ubee, Juniper, Aerohive, Brocade, HP, Firetide, and Xirrus are Wi-Fi equipment providers.  Cox, BHN, Charter, and TWC are cable network operators.

On August 5, 2016, the Judicial Panel on Multidistrict Litigation ("JPML") determined that centralization of the 14 actions involving MTel was appropriate, and transferred the cases to this Court for coordinated or consolidated pretrial proceedings. (Case No. 16-md-2722 ("MDL") D.I. 1)

### B.      Patents-in-Suit[6]

The patents-in-suit generally relate to wireless telecommunications.  The '403 patent is entitled "Method and System for Efficiently Providing Two Way Communication Between a Central Network and Mobile Unit."  The claims of the '403 patent cover methods for wirelessly simulcasting information signals.  ('403 patent at 33:11-30, 34:35-62)

---

[4]The four cases (and respective defendants) are: C.A. No. 16-699 (Ruckus); C.A. No. 16-700 (Aerohive Networks, Inc. ("Aerohive")); C.A. No. 16-701 (Xirrus, Inc. ("Xirrus")); and C.A. No. 16-702 (Firetide, Inc. ("Firetide")).

[5]Hereinafter, the Court refers to the 11 actions filed in the Eastern District of Texas as the "Texas Actions" and the defendants in those actions, collectively, as the "Texas Defendants."

[6]The patents-in-suit can be found in Exhibits 1, 2, and 3 to the Complaint in C.A. No. 16-699.

The '210 patent is entitled "Method and System for Providing Multicarrier Simulcast Transmission." The claims of the '210 patent cover systems for wirelessly transmitting information via two sets of carrier signals in simulcast. ('210 patent at 33:47-62, 34:44-64, 36:7-24)

The '891 patent is entitled "Multicarrier Techniques in Bandlimited Channels" and claims a system and methods for transmitting wireless signals using specific frequency spacing for carriers in a band-limited channel. ('891 patent at 6:4-44)

### C.    Defendant's Motion

Ruckus filed its Motion on September 1, 2016, seeking dismissal of MTel's complaint under two legal theories: (1) failure to mark, pursuant to 35 U.S.C. § 287, with respect to the '210 patent; and (2) failure of the patents-in-suit to claim patent-eligible subject matter, under 35 U.S.C. § 101. (D.I. 15; *see also* D.I. 16) On September 7, 2016, Brocade joined in Ruckus's Motion, incorporating Ruckus's Motion, opening brief, and supporting papers "in their entirety as if set forth herein." (MDL D.I. 13) MTel filed an answering brief in opposition on September 19, 2016, arguing that (1) there is no requirement to mark when there is no product to mark and (2) the patents-in-suit are not directed to patent-ineligible subject matter. (D.I. 21) The parties completed briefing on September 29, 2016. (D.I. 23) On October 11, 2016, Juniper joined in Ruckus's Motion. (MDL D.I. 36) The Court heard oral argument on October 26, 2016. (MDL D.I. 71 (Transcript ("Tr.")))

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires

3

the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372

F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but

whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat*

*Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted).

Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded

allegations in the complaint as true, and viewing them in the light most favorable to plaintiff,

plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000) (internal

quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a

right to relief above the speculative level on the assumption that the allegations in the complaint

are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation

that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson*

*v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation

marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion*

*Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported

conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power &*

*Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v.*

4

*Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

   **B.**   **Marking**

   Section 287(a) of the Patent Act limits the damages that a patent owner may recover in an infringement action.  A patent owner who fails to mark its products, or fails to require its licensees to mark their products, cannot recover damages relating to infringement occurring prior to the date that the alleged infringer receives actual notice of the alleged infringement.  *See* 35 U.S.C. § 287(a) ("In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice.  Filing of an action for infringement shall constitute such notice.").  The Federal Circuit has interpreted this language to allow a patentee to recover damages from the earlier of the time when it began marking products in compliance with § 287(a) and the time when the patentee gave an alleged infringer actual notice of its alleged infringement.  *See Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993) ("In light of the permissive wording of the present statute, and the policy of encouraging notice by marking, we construe section 287(a) to preclude recovery of damages only for infringement for any time prior to compliance with the marking or actual notice requirements of the statute.").

   **C.**   **Patent-Eligible Subject Matter**

   Under 35 U.S.C. § 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  There are three exceptions to § 101's broad patent-eligibility principles: "laws of nature, physical

5

phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980). Pertinent here is the third category, "abstract ideas," which "embodies the longstanding rule that an idea of itself is not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) (internal quotation marks omitted). "As early as *Le Roy v. Tatham*, 55 U.S. 156, 175 (1852), the Supreme Court explained that '[a] principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right.' Since then, the unpatentable nature of abstract ideas has repeatedly been confirmed." *In re Comiskey*, 554 F.3d 967, 977-78 (Fed. Cir. 2009).

In *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012), the Supreme Court set out a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355. First, courts must determine if the claims at issue are directed to a patent-ineligible concept – in this case, an abstract idea ("step 1"). *See id.* If so, the next step is to look for an "'inventive concept' – *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself" ("step 2"). *Id.* (certain quotation marks omitted). The two steps are "plainly related" and "involve overlapping scrutiny of the content of the claims." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

### 1. *Mayo* Step 1

At step 1, "the claims are considered in their entirety to ascertain whether their character *as a whole* is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015) (emphasis added); *see also Affinity Labs of Texas,*

6

*LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) ("The 'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter.").

The Federal Circuit has distinguished claims that are "directed to *an improvement to computer functionality* versus being directed to an abstract idea." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (emphasis added). *Enfish*, for example, found claims to be not abstract because the "plain focus of the claims is on an improvement to computer functionality itself," distinguishing such patent claims from those involved in *Alice*, which involved "economic or other tasks for which a computer is used in its ordinary capacity." *Id.* at 1336. By contrast, in *Alstom*, the Federal Circuit determined that certain claims *were* directed to an abstract idea because "the focus of the claims is not on . . . an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." 830 F.3d at 1354. *Enfish* adds that a patent specification's disparagement of prior art or "conventional" implementations may bolster a conclusion that claims are directed to a non-abstract improvement of technology rather than an abstract idea. 822 F.3d at 1337, 1339.

Courts should not "oversimplif[y]" key inventive concepts or "downplay[]" an invention's benefits in conducting a step-1 analysis. *See id.* at 1338; *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) ("[C]ourts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims.") (internal quotation marks omitted). "Whether at step one or step two of the *Alice* test, in determining the patentability of a method, a court must look to the claims as an ordered combination, without ignoring the requirements of the individual steps." *Id.*

7

### 2. *Mayo* Step 2

At step 2, the Federal Circuit has instructed courts to "look to both the claim as a whole and the individual claim elements to determine whether the claims contain an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *McRO*, 837 F.3d at 1312 (internal brackets and quotation marks omitted). The "standard" step-2 inquiry includes consideration of whether claim elements "simply recite 'well-understood, routine, conventional activit[ies].'" *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (quoting *Alice*, 134 S. Ct. at 2359). "Simply appending conventional steps, specified at a high level of generality, [is] not *enough* to supply an inventive concept." *Alice*, 134 S. Ct. at 2357 (emphasis in original; internal quotation marks omitted).

However, "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art." *Bascom*, 827 F.3d at 1350. In *Bascom*, the Federal Circuit held that "the limitations of the claims, taken individually, recite generic computer, network and Internet components, none of which is inventive by itself," but nonetheless determined that an *ordered combination* of these limitations was adequately alleged to be patent-eligible under step 2 at the pleading stage. *Id.* at 1349. The Federal Circuit has looked to the claims as well as the specification in performing the "inventive concept" inquiry. *See Affinity Labs of Texas v. Amazon.com Inc.*, 838 F.3d 1266, 1271 (Fed. Cir. 2016) ("[N]either the claim nor the specification reveals any concrete way of employing a customized user interface.").

The "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention" under step 2. *Alice*, 134 S. Ct. at 2358. "Given the ubiquity

8

of computers, . . . wholly generic computer implementation is not generally the sort of additional

feature that provides any practical assurance that the process is more than a drafting effort

designed to monopolize the abstract idea itself." *Id.* (internal citation and quotation marks

omitted).

### 3.    Preemption

The Supreme Court has instructed that, "in applying the § 101 exception, [courts] must

distinguish between patents that claim the building blocks of human ingenuity and those that

integrate the building blocks into something more, thereby transforming them into a patent-

eligible invention." *Alice*, 134 S. Ct. at 2354 (internal citation and quotation marks omitted).

The "concern that drives th[e] exclusionary principle [i]s one of pre-emption." *Id.* That is,

where a patent would preempt use of "basic tools of scientific and technological work," that is,

"[l]aws of nature, natural phenomena, and abstract ideas," the patent would "impede innovation

more than it would tend to promote it, thereby thwarting the primary object of the patent laws."

*Id.* (internal quotation marks omitted).

The Federal Circuit has considered the issue of preemption at both steps 1 and 2. For

example, in *McRO*, 837 F.3d at 1315, in support of its conclusion that a claim was patent-eligible

under step 1, the Federal Circuit held that limitations of the claim "prevent[ed] preemption of all

processes for achieving automated lip-synchronization of 3-D characters." In *Bascom*, 827 F.3d

at 1350, in support of the Court's conclusion that claims reciting "a specific, discrete

implementation of the abstract idea of filtering content" were not patent-ineligible under step 2 at

the pleading stage, the Federal Circuit explained that the claims did not preempt "all ways of

filtering content on the Internet."

9

### 4.   Machine-or-Transformation Test

"[T]he machine-or-transformation test is a useful and important clue, an investigative tool, for determining whether some claimed inventions are processes under § 101." *Bilski v. Kappos*, 561 U.S. 593, 604 (2010). However, it is "not the sole test for deciding whether an invention is a patent-eligible 'process.'" *Id*. Under the machine-or-transformation test, a patent claim that "uses a particular machine or apparatus" may be patent-eligible if it does not "pre-empt uses of the principle that do not also use the specified machine or apparatus in the manner claimed." *In re Bilski*, 545 F.3d 943, 954 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010). In addition, "a claimed process that transforms a particular article to a specified different state or thing by applying a fundamental principle" may be patent-eligible if it does not "pre-empt the use of the principle to transform any other article, to transform the same article but in a manner not covered by the claim, or to do anything other than transform the specified article." *Id*.

## III.   DISCUSSION

### A.   Marking

Ruckus argues that MTel "has the burden of *pleading* and proving compliance with § 287." (D.I. 16 at 10) (emphasis in original) (citing *Sentry Prot. Prod., Inc. v. Eagle Mfg. Co.*, 400 F.3d 910, 918 (Fed. Cir. 2005)) This duty, Ruckus contends, extends to requiring MTel to plead compliance with § 287 with respect to MTel's "licensees and predecessors in interest." (D.I. 23 at 2) According to Ruckus, MTel's complaint should be dismissed with respect to the '210 patent because MTel "failed to plead compliance with § 287" and "the '210 patent expired before the filing of the complaint." (*Id*. at 3)

MTel counters that it was not required to plead compliance with § 287 because the statute applies only to patent owners and licensees that make, offer to sell, sell, or import a "patented article," yet neither MTel nor any of its licensees or predecessors-in-interest ever engaged in any of these activities. (*See* D.I. 21 at 3) (citing *Wine Ry. Appliance Co. v. Enter. Ry. Equip. Co.*, 297 U.S. 387 (1936)) *See also Texas Dig. Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1219 (Fed. Cir. 2002) (collecting Federal Circuit cases applying *Wine Railway* to current statutory counterpart); *In re Elonex Phase II Power Mgmt. Litig.*, 2002 WL 242363, at *2 (D. Del. Feb. 20, 2002) ("As [the licensee] had no products to mark, the provisions of Section 287(a) cannot apply to bar pre-suit damages."); *Med. Graphics Corp. v. SensorMedics Corp.*, 1995 WL 523633, at *3 (D. Minn. June 5, 1995); *Tulip Computers. Int'l B.V. v. Dell Computer Corp.*, 2003 WL 1606081, at *13 (D. Del. Feb. 4, 2003). MTel represented at the hearing that no predecessors-in-interest nor licensees of the '210 patent have ever practiced it. (Tr. at 34) (Court: "So you can represent today at least that nobody who has ever held this patent, at least the '210, ever practiced it." Counsel: "That is correct, Your Honor. So we have talked to the inventors. We have done investigation. We have talked to the owners of the company.").

The Court agrees with MTel that it was not required to plead compliance with § 287. *Sentry*, and the other cases cited by Ruckus, address circumstances in which parties to whom the marking statute applies were required to plead compliance with § 287. *See, e.g., Sentry*, 400 F.3d at 918. Such is not the case here. Ruckus's contentions with respect to marking amount to mere speculation that some predecessor-in-interest or licensee may have practiced the '210 patent. MTel was not required to plead compliance with the marking statute under *Wine Railway* because there is no evidence that any predecessor-in-interest or licensee has ever practiced the

11

patent.

Rule 12 requires the Court to view the complaint in the light most favorable to MTel at this stage.[7] Facts may arise during discovery that may require MTel to seek leave to amend its complaint, but it is not required to do so now based on speculation as to what may be revealed later.

Thus, the Court will deny Ruckus's motion with respect to marking.

**B. Patent-Eligible Subject Matter**

**1. '891 Patent**

Ruckus argues that asserted claims 1-5 of the '891 patent are invalid under § 101 for two independent reasons: (1) the claims do not fall under any of the four statutory categories of patentable subject matter defined by § 101 ("process, machine, manufacture, or composition of matter") and (2) the claims are directed to a patent-ineligible abstract idea.

**a. Statutory Subject Matter**

Ruckus contends that the asserted claims of the '891 patent are directed to "'a transitory, propagating signal,'" which is unpatentable under *In re Nuijten*, 500 F.3d 1346, 1357 (Fed. Cir. 2007). (D.I. 16 at 15 (quoting *Nuijten*, 500 F.3d at 1357)) According to Ruckus, "[w]hile claims 1-4 ostensibly claim a one-step method for transmitting a signal, such a method is indistinguishable from claiming the signal itself." (*Id.*) Ruckus argues that "claim 5 includes the additional nominal step of transmitting the plurality of carriers from the same transmission

---

[7]Were there a duty to plead marking in this case, dismissal would still not be appropriate. MTel contingently sought leave to amend its complaint to plead compliance with § 287 if the Court were inclined to side with Ruckus (Tr. at 35), which Ruckus agreed "would be fair" (*id.* at 11).

source, which merely defines a multi-carrier modulated signal." (*Id.*) MTel counters that the claims come within the "process" category of patentable subject matter. (Tr. at 63)

The Court agrees with MTel. On its face, the '891 patent claims ***methods*** for "operating a plurality of paging carriers in a single mask-defined, bandlimited channel," or what may otherwise be characterized as a ***process*** for transmitting information in a bandlimited channel by spacing carriers at certain relative frequency differences. ('891 patent at 6:4-5, 31-32) Ruckus's sole authority for its "signal" theory of patent-ineligibility, *Nuijten,* is distinguishable. The claim at issue in *Nuijten **explicitly*** recited a "signal," unlike the claims of the '891 patent; the Federal Circuit held there that "a process claim must cover ***an act*** or series of acts and Nuijten's signal claims do not." 500 F.3d at 1355 (emphasis added). The claims of the '891 patent do cover "an act" – namely, the act of transmitting specifically-arranged carriers in a bandlimited channel – and, therefore, qualify as process claims under § 101.

### b.    Abstract Idea

Ruckus alternatively argues that the claims of the '891 patent are patent-ineligible as being directed to the abstract idea of "modulating a multi-carrier signal" according to a mathematical formula. (D.I. 16 at 15-17) Ruckus contends that the '891 patent's claims are similar to those found to be ineligible in *Parker v. Flook*, 437 U.S. 584, 588-96 (1978). (D.I. 16 at 16) MTel counters that the claims are not directed to a patent-ineligible abstract idea, but rather are directed to a technical solution that may utilize a mathematical formula. (D.I. 21 at 11 & n.42 (citing *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1350 (Fed. Cir. 2014) ("In determining whether a process claim recites an abstract idea, we must examine the claim as a whole, keeping in mind that an invention is not ineligible just because it relies

13

upon a law of nature or mathematical algorithm.")))

There are disputed issues of fact and potential claim construction disputes that preclude the Court from ruling, at this time, that the claims of the '891 patent are patent-ineligible. On the current record, the Court cannot agree with Ruckus that the claims asserted here are similar to those analyzed in *Flook*. *Flook* appears to be distinguishable because the claims, read in a light most favorable to MTel, are not "'directed essentially to a method of calculating, [or] using a mathematical formula.'" *Flook*, 437 U.S. at 595 (quoting *In re Richman*, 563 F.2d 1026, 1030 (C.C.P.A. 1977)).

Ruckus (and the other Texas Defendants) may develop facts during discovery that could show that the ideas covered by the claims of the '891 patent are "conventional" or "routine," but the '891 patent's specification, which the Court must accept as true at this point, seems to indicate that the '891 patent is directed to the technical solution of achieving "higher capacity over a bandlimited channel for paging without the need for stringent subchannel interference protection." ('891 patent at 2:15-17) Facts developed, as well as further rulings from the Court, may also establish the breadth of the claims and better inform the Court's preemption analysis.[8]

## 2.    '403 Patent

### a.    Claim 1

Ruckus argues that claim 1 of the '403 patent is directed to an abstract idea and that it "effectively captures any situation in which transmitters have transmitted different information at some point in time after having transmitted a block of information in simulcast." (D.I. 16 at 17)

---

[8]The Court finds that Ruckus has not shown that any claims of the asserted patents are patent-ineligible under step 1. It is therefore unnecessary for the Court to consider step 2 for any of the asserted patents.

14

Ruckus further argues that "this claim is so abstract that there is no discernible relationship between the blocks of information transmitted, including the criteria for which transmitters transmit which information or whether the blocks of information are intended for the same or different receivers." (*Id.*)

This latter argument by Ruckus highlights the need for claim construction before ruling on Ruckus's § 101 arguments. One or more of the claim limitations may, potentially, be construed in a manner that defines and clearly limits the arguably broad language of the claims. As with the claims of the '891 patent, further development of the record will also inform the Court's preemption analysis. Ruckus's citation to *Alice* for the proposition that claim 1 covers "basic tools of scientific and technological work" (*id.* (citing 134 S. Ct. at 2354)) is unsupported by any evidence at this stage of the case. The Court cannot determine now if using "first and second sets of transmitters" to broadcast in simulcast and then broadcast independently is an abstract concept of the kind held to be patent-ineligible in *Alice*. (*See* '403 patent at 33:23-25).

### b.    Claims 10 and 11

As Ruckus characterizes claims 10 and 11 of the '403 patent, they cover the concept embodied in claim 1 with an "additional ostensible step of dynamically reassigning" transmitters. (D.I. 16 at 18) For the reasons already discussed above with respect to claim 1, issues of fact and potential claim construction disputes must be resolved before the Court can rule on these arguments. On the current record, the Court cannot say that claims 10 and 11 are directed to patent-ineligible subject matter.

### 3.    '210 Patent

Ruckus argues that the asserted claims of this patent are directed to "the ideas of

15

multi-carrier transmission and simulcasting," which "are well-known abstract ideas." (D.I. 16 at 19) This is a factual assertion that, in this case, the Court cannot take as true based on the limited record before it at the Rule 12 stage. (*See* D.I. 21 at 6-8) On the current record, the Court cannot say whether multi-carrier transmission and simulcasting are abstract ideas or whether they were well-known in the art. This case is not akin to *Alice*, *Bilski*, or other cases involving claims that covered concepts that were so widely known that courts could take judicial notice of the fact that they were "conventional," "well-known," or "routine."

## IV. CONCLUSION

For the foregoing reasons, Ruckus's Motion (D.I. 15) will be denied. Specifically, Ruckus's motion to dismiss for failure to mark will be denied and the motion to dismiss for failure to claim patent-eligible subject matter will be denied without prejudice. An appropriate Order follows.